IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JANICE BUTTRUM (a.k.a. JANICE BUTTRAM),<br><br>Plaintiff,<br><br>v.<br><br>DAVID J. HERRING, *et al.*,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO.<br>1:25-cv-1116-AT |

**ORDER**

This matter comes before the Court on Defendant's Motion to Dismiss [Doc. 24] Plaintiff's First Amended Complaint (Doc. 21). For the reasons that follow, the Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

## I. Background

Plaintiff Janice Buttrum ("Plaintiff") filed her operative First Amended Complaint ("FAC") in this action on June 18, 2025. (FAC, Doc. 21). Pursuant to 42 U.S.C. § 1983, Plaintiff brings claims under the Eighth and Fourteenth Amendments against the Defendant members of the Georgia Board of Pardons and Paroles (the "Board"). (FAC ¶¶ 90-106). Plaintiff seeks declaratory and injunctive relief related to Georgia's statutory and regulatory scheme governing parole determinations, which Plaintiff contends is unconstitutional both in structure and effect in its treatment of life-sentenced juvenile offenders like her. (*Id.* at 28-31).

In 1981, Plaintiff was convicted of murder and sentenced to death for a crime she committed when she was seventeen. (*Id.* ¶ 1). Her death sentence was later vacated on federal habeas review, and she was resentenced to life in prison without the possibility of parole in 1991. (*Id.* ¶ 4). With the consent of the prosecuting district attorney's office, Plaintiff was once again resentenced in 2017. This time, Plaintiff was given a life sentence ***with*** the possibility of parole, after intervening Supreme Court decisions indicated that only juvenile offenders whose crimes reflect "irreparable corruption" should be sentenced to a lifetime in prison. (*Id.* ¶ 6). *See also Miller v. Alabama*, 567 U.S. 460, 480 (2012); *Montgomery v. Louisiana*, 577 U.S. 190, 195 (2016).

Plaintiff explains that, over the course of the 44 years she has spent in prison, she has matured into a responsible adult who has taken advantage of "virtually all the Department of Corrections programs made available to her." (*Id.* ¶ 8). She has completed thousands of hours of job training and has earned a High School Equivalency Certificate as well as college credits. (*Id.* ¶ 9). Plaintiff's accomplishments have earned her admission to the Honor Dorm at the prison where she is incarcerated. (*Id.* ¶ 10). Meanwhile, Plaintiff's health has deteriorated over the decades since she committed her crimes as a teenager. Now a 62-year-old great-grandmother, she has weakening eyesight and limited mobility, she takes several medications daily, and she has undergone several surgeries. (*Id.* ¶¶ 7, 11). Plaintiff contends that these factors—both her positive record showing maturity and rehabilitation as well as her declining health—make her an "obvious candidate

for parole and release." (*Id.* ¶ 12). However, Plaintiff has been denied release on parole five times since becoming eligible for parole consideration in 2017. According to Plaintiff, she has received only "perfunctory consideration" by the Board, which has issued "rote denials on every occasion, referring only to the severity of her crime in support of each denial." (*Id.* ¶ 13). Specifically, Plaintiff contends Defendants have denied her parole without considering (a) her young age at the time of her offense, (b) her capacity for maturation and rehabilitation, and (c) her demonstrated maturation, self-improvement, education, and reform. (*Id.* ¶¶ 13-14). Based on these allegations, Plaintiff asserts she has been deprived of her constitutionally protected liberty interests without due process of law, in violation of both the Eighth and Fourteenth Amendments.

Defendants now move to dismiss the FAC based on lack of standing and failure to state a claim. [Doc. 24]. Having considered the parties' briefs and oral argument on the Motion to Dismiss, the Court enters the following Order.

## II. Legal Standard

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216 (3d ed. 2002); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Duke v.*

*Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## III. Discussion

Plaintiff's claims arise against a constitutional backdrop that forbids mandatory life-without-parole sentences for juvenile offenders—even those, like Plaintiff, who have committed a homicide offense. *Miller*, 567 U.S. at 479-80. Although a sentencing authority may, in some "uncommon" cases, ultimately determine that a juvenile homicide offender should be sentenced to life without the possibility of parole, the sentencer must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison" before doing so. *Id.* Thus, any sentencing scheme that ***mandates*** life in prison without possibility of parole for a juvenile offender runs afoul of the Eighth Amendment. *Id.* at 479.

Relevant to the parties' arguments, two years before the Supreme Court decided *Miller*, it decided in another watershed case that the Eighth Amendment forbids life-without-parole sentences for ***non-homicide*** juvenile offenders.

*Graham v. Florida*, 560 U.S. 48 (2010). As part of that decision, the Supreme Court explained that, although a state "is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime," any state sentencing regime must provide any such offender "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 75. The *Miller* Court then extended the *Graham* holding to juvenile homicide offenders through its holding discussed above, forbidding mandatory life-without-parole sentences for those offenders. *Miller*, 567 U.S. at 479-80.

Constitutional protections for juvenile offenders do not stop there. Even where a sentencing scheme affords the possibility of parole to a life-sentenced juvenile offender, the Eleventh Circuit has explained that the parole system must be more than a "sham" to withstand constitutional scrutiny under the Eighth Amendment. *See Howard v. Coonrod*, 134 F.4th 1136, 1145 (11th Cir. 2025) ("A state may not evade Eighth Amendment scrutiny simply by labeling a sentence 'life with parole' when, in substance, it is a life-*without*-parole sentence. . . . [S]ome possibility of parole—however remote—must actually exist."); *id.* at 1146 ("[Juvenile] homicide offenders may be sentenced to less than life without parole, so long as the parole or other release system isn't a sham.").

Under Georgia's sentencing regime, the lightest sentence that a sentencing judge may impose for a homicide offense is life ***with*** parole. O.C.G.A. § 16-5-1(e)(1). Thus, where a juvenile is convicted of and sentenced for homicide in Georgia, the Constitution mandates that (1) the sentencer must have discretion to

sentence the juvenile offender to life with a possibility of parole, and (2) the parole consideration process must be more than a mere "sham." *Howard*, 134 F.4th at 1145-47. The Court must venture deeper into the thicket of Georgia's sentencing regime to articulate why Plaintiff contends it falls short of these mandates.

First, under O.C.G.A. § 42-9-40(a), the Board is required to adopt, implement, and maintain a parole guideline system for "all inmates, ***except those serving life sentences***, who will become statutorily eligible for parole consideration." (emphasis added). There is no statute under Georgia law requiring the Board to adopt a parole guideline system to govern consideration of parole for life-sentenced offenders, even those such as Plaintiff who committed their offense as juveniles. Accordingly, to the extent the Board considers granting parole to such offenders, there are no standards or guidelines in place to govern that consideration.

Second, the Board has complied with O.C.G.A. § 42-9-40(a) by implementing its own rules and regulations regarding parole consideration. One such rule, which Plaintiff challenges here, contains nineteen subsections covering various matters related to parole consideration. *See* Ga. Comp. R. & Regs. 475-3-.05. In support of her claims, Plaintiff draws the Court's attention to one sub-provision of this regulation in particular: Rule 475-3-.05(5), which provides in pertinent part:

> In considering parole for persons who will become statutorily eligible for parole consideration ***and who are serving less than a life sentence***, the Board shall review a recommendation as to months to

> serve. This recommendation will be obtained from the Parole Decision Guidelines system which accounts for the severity of the crime and the inmate's risk to re-offend. . . .

Ga. Comp. R. & Regs. 475-3-.05(5) (emphasis added).[1]

Plaintiff contends that, taken together, O.C.G.A. § 42-9-40(a) and Ga. Comp. R. & Regs. 475-3-.05(5) render any parole consideration that the Board ostensibly provides to Plaintiff "standardless and rote." (FAC ¶ 99). That is, since the State's legal framework governing parole consideration excludes life-sentenced juvenile offenders like Plaintiff from its purview, Plaintiff contends the Board is permitted to arbitrarily deny parole to such offenders without any meaningful or objective criteria whatsoever. (*Id.* ¶¶ 98-99).

From this foundational argument sprout two different but related constitutional claims. The first, arising under the Eighth Amendment, is that Georgia's legal framework governing parole consideration for life-sentenced juvenile offenders renders the possibility of such an offender obtaining release on parole a "sham," because the Board may issue perfunctory parole denials untethered to any objective criteria or standards. Put another way, Defendants have the power under Georgia's sentencing regime to impose *de facto* sentences of life ***without*** the possibility of parole on juvenile offenders, even though such

[1] Although the remainder of sub-provision (5) is not directly pertinent to Plaintiff's claims, to provide more fulsome context, the provision goes on to explain how the inmate's risk to re-offend is evaluated, the purpose and nature of the Parole Decision Guidelines System, the procedures followed after the Board makes its recommendation, and the Board's discretionary authority to change its decision under the Parole Decision Guidelines and to modify the Guidelines. Ga. Comp. R. & Regs. 475-3-.05(5).

sentences would be unconstitutional if imposed *de jure*. And there is no check on that power because life-sentenced offenders—including those who were juveniles at the time of the offense—are explicitly excluded from the Parole Decision Guidelines system. For the same reasons, Plaintiff further contends she has been deprived of her Eighth Amendment right to a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," an entitlement guaranteed to certain juvenile offenders in *Graham*. 560 U.S. at 75.

Plaintiff's second constitutional claim arises under the Fourteenth Amendment. However, it is closely intertwined with her Eighth Amendment claim that she has constitutionally protected liberty interests to demonstrate maturity and reform and to have a meaningful opportunity for release based on a genuine, non-"sham" parole proceeding. Building upon this contention, Plaintiff asserts that Georgia's parole system deprives her of these rights without due process of law, in violation of the Fourteenth Amendment.

In her prayer for relief, Plaintiff specifically requests a declaratory judgment that makes the following findings and declarations:

> (1) As written and applied to Plaintiff, Georgia's parole scheme violates the Eighth and Fourteenth Amendments by authorizing the Board to exclude life-sentenced juvenile offenders from parole consideration governed by any meaningful criteria or guidelines, and by failing to provide such offenders a meaningful opportunity for release based on demonstrated maturation and rehabilitation;

> (2) The parole consideration afforded to Plaintiff by the Board amounts to no more than a sham, rendering Plaintiff's sentence the functional equivalent of a life sentence with no possibility of parole, in violation of the Eighth Amendment; and
>
> (3) Defendants' deprivation of Plaintiff's constitutionally protected liberty interest under the Eighth Amendment to genuine parole consideration and to a meaningful opportunity for release based on demonstrated maturity and rehabilitation has been done without due process of law, in violation of the Fourteenth Amendment.

(FAC, Doc. 21 at 28-29).

Plaintiff also seeks a permanent injunction (1) to foreclose the Board from issuing perfunctory denials of parole to Plaintiff and other life-sentenced juvenile offenders; and (2) to require the Board to develop new guidelines for parole determinations for such offenders to ensure that their age at the time of the offense is taken into account, and that they are afforded a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. (*Id.* at 29-31).

**A. Standing**

Before turning to the substance of Plaintiff's constitutional claims, the Court will first address Defendants' argument that Plaintiff lacks standing to bring her declaratory judgment claim.

A plaintiff bears the burden of demonstrating that she has standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021) (citing *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 561 (1992)). Standing is determined at the time a plaintiff's complaint is filed. *Arcia v. Fla. Sec. of State*, 772 F.3d 1335, 1340 (11th Cir. 2014). To demonstrate standing to pursue a particular form of relief, a plaintiff must show (1) that she suffered an injury in fact that is "concrete, particularized, and actual or imminent;" (2) that the injury was likely caused by the defendant; and (3) that the injury would likely be redressed by the judicial relief sought. *Ramirez*, 594 U.S. at 423 (citation omitted). When a plaintiff seeks prospective injunctive relief, she must demonstrate a "'real and immediate threat' of future injury." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1274–75 (11th Cir. 2003) (citing *City of L.A. v. Lyons*, 461 U.S. 95 (1983)).

Defendants contend Plaintiff's claim for declaratory judgment should be dismissed for lack of standing because Plaintiff fails to plausibly allege a real and immediate threat of injury that is fairly traceable to O.C.G.A. § 42-9-40(a) or Ga. Comp. R. & Regs 475-3-.05, and that is likely to be redressed by declaring either, or both, unconstitutional. [Doc. 24-1 at 11-15].

Specifically, Defendants argue that because the Georgia law and related regulation governing parole consideration expressly do not apply to Plaintiff or to any offender serving a life sentence, she has failed to plausibly allege that she has suffered or is likely to suffer injury from them. [*Id.* at 12-13]. For the same reason, Defendants assert Plaintiff has failed to state a claim under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, because she cannot assert a reasonable

expectation of future injury from a statute and regulation that do not apply to her. [*Id.* at 13-14].

Defendants also contend Plaintiff has failed to meet the traceability requirement of standing, because to the extent Plaintiff alleges any injury, it is not "fairly traceable" to the challenged statute or regulation or to the Board's alleged application of either "because, again, the provisions do not apply to inmates serving life sentences, and neither precludes the Board from considering the factors to which Plaintiff claims she is constitutionally entitled." [*Id.* at 14]. Based on the same rationale, Defendants assert that a declaration from this Court that O.C.G.A. § 42-9-40(a) and Ga. Comp. R. & Regs 475-3-.05 are unconstitutional would not redress any injury she is likely to suffer. Therefore, Defendants assert she lacks standing to seek a declaratory judgment with respect to those provisions. [*Id.* at 14-15].

Defendants' argument that Plaintiff lacks standing to challenge the constitutionality of Georgia's parole regime is unavailing. Defendants aver that, because Plaintiff (as a life-sentenced offender) is expressly excluded from the purview of O.C.G.A. § 42-9-40(a) and Ga. Comp. R. & Regs 475-3-.05, Plaintiff cannot have been injured by their application because they do not apply to her. However, the premise of Plaintiff's claims is that the rules ***do apply*** to exclude her. That is, Plaintiff's contention that Georgia's parole system is a "sham" with respect to her and other life-sentenced juvenile offenders like her relies on the premise that ***because*** these rules do not apply to such offenders, they have been

excluded from genuine parole consideration. Defendants take this argument and turn it on its head to argue that Plaintiff has not suffered injury and is not likely to suffer injury as a result of the application of these rules. But to be excluded from the protection afforded by Georgia's parole scheme when being considered for parole is a form of injury.

In the equal protection context, the Supreme Court has held that a person or group excluded from benefits conveyed by an underinclusive statute has standing to challenge the statute as unconstitutional, even if the effect of striking down the statute is to deny the benefit to the intended group rather than extending the benefit to the plaintiff. *See Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 7-8 (1989) (finding a plaintiff had standing to challenge the constitutionality of a tax exemption that did not apply to the plaintiff); *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 227 (1987) (same); *Orr v. Orr*, 440 U.S. 268, 272 (1979) (finding a plaintiff had standing to bring an equal protection challenge to an Alabama law authorizing courts to obligate husbands—but not wives—to pay alimony, even though he would not be entitled to receive alimony in any event).

Although Plaintiff does not bring an underinclusivity challenge here, the Supreme Court's opinion in *Orr* opinion is nonetheless instructive in a broad sense with respect to Defendants' standing argument. There, the Supreme Court acknowledged that to declare Alabama's alimony law unconstitutional might lead to the State correcting this constitutional infirmity in a way that gave no redress to the plaintiff—that is, the State might simply permit alimony awards to husbands

as well as wives, which would not benefit the plaintiff because he would remain obligated to pay alimony. *Orr*, 440 U.S. at 272. Nonetheless, the Supreme Court found the plaintiff had standing because the State might instead "deny alimony to both parties" to come into constitutional compliance, which ***would*** benefit the plaintiff. *Id.* Thus, "[b]ecause we have no way of knowing how the State will in fact respond, unless we are to hold that underinclusive statutes can never be challenged because *any* plaintiff's success can theoretically be thwarted, [the plaintiff] must be held to have standing here." *Id.*

Similarly, here, if the Court were to declare Georgia's statutory and regulatory parole framework to be unconstitutional as applied because it expressly excludes life-sentenced offenders from its ambit, the State might remedy that by extending the reach of the Parole Decision Guidelines system to life-sentenced juvenile offenders like Plaintiff.[2] In other words, Georgia could bring its parole system into compliance with the Constitution "either by extending benefits to the previously disfavored class or by denying benefits to both parties (*e.g.*, by repealing the statute as a whole)." *Id.* If it extended the benefits of the Parole Decision Guidelines system to the previously disfavored class of life-sentenced juvenile offenders like Plaintiff, that would redress the harm alleged in this case—namely, that the Board has denied Plaintiff release on parole in standardless, rote decisions without affording her the benefit of any of the considerations it is obligated to give

[2] Notably, Plaintiff brings only an as-applied challenge to O.C.G.A. § 42-9-40(a) and Ga. Comp. R. & Regs 475-3-.05. She does not bring a facial challenge to these laws. (*See* FAC, Doc. 21 at 28-29; Doc. 30 at 36 n.104).

to non-life-sentenced offenders under O.C.G.A. § 42-9-40(a) and Ga. Comp. R. & Regs 475-3-.05.

For these reasons, Plaintiff has met her burden to show that she has suffered and will likely continue to suffer an injury that is fairly traceable to her exclusion from the procedural protections and benefits afforded by O.C.G.A. § 42-9-40(a) and Ga. Comp. R. & Regs 475-3-.05(5) to other offenders being considered for release on parole. She has also shown that her injury may be redressed by a finding that, as applied to Plaintiff and other life-sentenced juvenile offenders, this parole scheme is unconstitutional. Accordingly, Defendants' motion to dismiss based on lack of standing is **DENIED**.

The Court now turns to Defendants' substantive arguments attacking Plaintiff's constitutional claims under Rule 12(b)(6).

**B. Plaintiff's Eighth Amendment Claim (Count I of the FAC)**

First, Defendants assert that Plaintiff has failed to state a plausible claim for relief under the Eighth Amendment. In support, they rely heavily on the Eleventh Circuit's 2025 ruling in *Howard v. Coonrod*, which dealt with similar challenges to Florida's parole system. 134 F. 4th 1136. The Court finds some merit in Defendants' contention that *Howard* forecloses at least one major dimension of Plaintiff's Eighth Amendment claim. In particular, Plaintiff pins her Eighth Amendment claim, in part, on the rule first set forth by the Supreme Court in *Graham v. Florida*, that juvenile offenders must be afforded a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."

560 U.S. at (2010). Plaintiff contends this "meaningful opportunity" standard applies to her. (FAC ¶ 97). However, the Eleventh Circuit has expressly held that *Graham*'s "meaningful opportunity" standard does not apply to homicide offenders. *Howard*, 134 F.4th at 1144. Accordingly, this asserted ground for relief under the Eighth Amendment cannot go forward.[3]

However, Plaintiff has otherwise stated a viable Eighth Amendment claim on the basis that Defendants have not afforded Plaintiff a "genuine parole consideration that amounts to more than a sham[.]" (FAC ¶ 100). As discussed above, the Eleventh Circuit has set a low bar for what passes constitutional muster when it comes to parole consideration for juvenile ***homicide*** offenders serving life sentences with the possibility of parole. To meet that bar, a state's parole system for such offenders need only be more than a "sham." "A state may not evade Eighth Amendment scrutiny simply by labeling a sentence 'life with parole' when, in substance, it is a life-*without*-parole sentence." *Howard*, 134 F.4th at 1145. Thus, if a state's sentencing regime provides the option of a life-with-the-possibility-of-parole sentence to a juvenile homicide offender, "some possibility of parole—

[3] Plaintiff concedes as much in her FAC, acknowledging "that the parties and the Court are bound by the Eleventh Circuit's decision in *Howard v. Coonrod* which held that (1) *Graham*'s 'meaningful opportunity' standard does not apply to homicide cases and (2) the Eighth Amendment does not create a 'cognizable liberty interest in a meaningful opportunity for release' that could undergird a due process claim. 134 F.4th at 1144-45, 1149-50." (FAC, Doc. 21 at 15 n.1). However, Plaintiff has pled her Eighth and Fourteenth Amendment claims as though she is entitled to the constitutional protection of *Graham*'s "meaningful opportunity" standard in order to preserve her ability to challenge those rulings on appeal and to argue that *Howard* was wrongly decided. (*Id.*).

however remote—must actually exist." *Id*. If, however, the state maintains a "full-on sham parole system," that system would violate the Eighth Amendment. *Id.*

Here, the Court finds that Plaintiff has plausibly alleged that Georgia's parole consideration process for juvenile homicide offenders serving life-with-parole sentences is a sham, and she has thus sufficiently stated a claim under the Eighth Amendment. Georgia law does not require the Board to adopt, implement, and maintain a parole guideline system for any inmates who are serving life sentences, regardless of whether they are serving life sentences with the ostensible possibility of parole. O.C.G.A. § 42-9-40(a). Because the statute does not apply to life-sentenced offenders, the Board is expressly permitted not to consider factors such as maturity, rehabilitation, or any other "social factors" the Board is required to consider for those inmates who have not been sentenced to life.[4] (FAC ¶ 61). Per the plain text of the Board's rules and regulations regarding parole consideration, the Board's Parole Decision Guidelines system applies only to offenders "who are serving less than a life sentence," making no distinction between life-sentenced juvenile offenders and adult offenders. Ga. Comp. R. & Regs. 475-3.05(5); *see also* (FAC ¶ 62). The express exclusion of ***all*** life-sentenced offenders from Georgia's law and regulations governing parole consideration certainly lends credence to Plaintiff's allegations that parole proceedings for life-sentenced juvenile offenders

[4] Specifically, for inmates who have not been sentenced to life and who are being considered for release on parole, the statute requires the Board to consider "the social factors which the board has found to have value in predicting the probability of further criminal behavior and successful adjustment under parole supervision." O.C.G.A. § 42-9-40(a).

like her are a sham. It is plausible to infer that a parole system that allows the Board to act with zero accountability when making parole decisions for life-sentenced offenders is set up to ensure automatic denials of parole to any such offenders, even if they were juveniles at the time of their offense.

Other allegations in Plaintiff's FAC further bolster the point. Defendants argue that nothing in Georgia's parole scheme precludes the Board from applying the Parole Decision Guidelines system in deciding whether to grant parole to life-sentenced offenders. That is true. But Plaintiff does not rely solely on the fact that the statutory and regulatory scheme ***permit*** the Board to make its parole decisions for life-sentenced juvenile offenders without applying any particular criteria or standards. She goes further to allege facts that, if taken as true, tend to show that the Board indeed acts on this authority under the law to issue perfunctory denials of parole to such offenders without giving them genuine consideration.

For instance, Plaintiff alleges that of the 15 juvenile offenders sentenced to life without the possibility of parole before *Miller* was decided in 2012, 11 were subsequently resentenced to life ***with*** the possibility of parole, but not a single one had been released as of September 2023. (FAC ¶ 81; *see also* Ex. B to FAC, Allie Gross, "Georgia leading nation in new juvenile lifers," ATLANTA JOURNAL CONSTITUTION (Sep. 7, 2023) at 28). This allegation creates a plausible inference that the Board does not afford genuine parole consideration to juvenile offenders serving life sentences. *Cf. Howard*, 134 F.4th at 1146-47 (finding Florida's parole system is not a "sham" with respect to juvenile homicide offenders, because

"[s]ince 2012, the [Florida Commission on Offender Review] has granted parole to at least 24 juvenile lifers . . . . Given that about 170 juvenile lifers remain incarcerated, the math works out to about 1% of the juvenile-lifer population obtaining release yearly. Florida's system may not be a particularly generous one, but it's hardly a sham.").

Plaintiff also alleges that, when asked to produce documents related to the Board's rules, regulations, guidelines, policies, and/or procedures that address how the Board members are to consider the demonstrated maturity and rehabilitation of life-sentenced juvenile offenders since the time of the offense, Defendants responded that they do not have any responsive documents. (FAC ¶ 67). According to Plaintiff, Defendants also stated that they have no documents related to the Board's rules, regulations, guidelines, policies, and/or procedures that address how the Board members differentiate between adult and juvenile offenders when making parole decisions. (*Id.* ¶ 68). Plaintiff alleges Defendants similarly had no responsive documents related to the rules, regulations, guidelines, policies, and/or procedures that address how the Board determines whether a life-sentenced offender has served sufficient time in prison considering the nature and circumstances of the offense, or how the Board distinguishes between adult and juvenile offenders serving life sentences when making such a determination. (*Id.* ¶¶ 69-70).[5]

---

5 Although some of these allegations are tied to Plaintiff's rejected theory that, as a juvenile offender, she is entitled to "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" under *Graham*, the Court finds that these

Most importantly, Plaintiff's allegations regarding her own history of parole denials sufficiently state a claim under the Eighth Amendment that her parole proceedings have been a sham. Plaintiff contends that, each time she has been considered for release on parole, the Board issued form denial letters stating, "The main reason cited by the Board, after a review of the totality of your case, is insufficient amount of time served to date given the nature and circumstances of your offense(s)." (FAC ¶¶ 40-42, 45-46). Plaintiff further alleges that, when she sought reconsideration of her third parole denial on the basis of her declining health, the Board denied reconsideration and instructed her lawyer to request a Medical Reprieve should Plaintiff's medical condition "become terminal." (*Id.* ¶ 43). Plaintiff contends that this response "tends to confirm that the defendant members of the Board have no intention of giving Ms. Buttrum's release on parole any genuine consideration." (*Id.*).

Based on these factual allegations, Plaintiff has plausibly stated a claim that Georgia's statutory and regulatory framework governing parole considerations in the juvenile context here runs afoul of the Eighth Amendment. "[A] sentencer confronted with a juvenile convicted of murder must have the discretion to impose

---

facts, if true, alternatively lend credence to the still-viable theory that the Board's process of parole consideration for life-sentenced juvenile offenders is a mere sham. If the Board has no rules or guidelines it must follow when deciding whether to grant parole to a life-sentenced juvenile offender, then the Board could deny parole to such an offender automatically. Further, the fact that the State was unable to produce evidence to Plaintiff regarding the factors it considers when making parole decisions for life-sentenced juvenile offenders lends support to the inference that the Board does not engage in a true deliberative process with respect to those offenders.

a non-life-without-parole sentence after 'considering an offender's youth and attendant characteristics.'" *Howard*, 134 F.4th at 1145 (quoting *Jones v. Mississippi*, 593 U.S. 98, 106 (2021)). Accordingly, if a state maintains a sham parole system for life-sentenced juvenile offenders, it would violate those offenders' Eighth Amendment rights "because sentencers would not, in fact, have the *Miller*-mandated discretion to impose a sentence other than life without parole." *Howard*, 134 F.4th at 1145.

Put another way, if a life-sentenced juvenile offender like Plaintiff has no real chance—however remote—of actually obtaining release on parole, because her parole proceedings are a sham and it is a foregone conclusion that the Board will deny parole, she is effectively serving a sentence of life-without-parole. And, if Plaintiff is effectively serving a sentence of life-without-parole despite having been resentenced to life-with-the-possibility-of-parole in 2017, that means that her sentencer in 2017 effectively did not have the constitutionally mandated discretion to impose a sentence other than life without parole. Plaintiff has alleged enough facts in her operative complaint to make this scenario plausible. She has shown that the Board's parole decisions for life-sentenced juvenile offenders are not accountable to any standards or criteria whatsoever. She has further shown that, each time she has ostensibly been considered for release on parole, the Board has issued perfunctory denials that reference only the nature and circumstances of her offense. But Plaintiff's offense was sufficiently serious to carry the death penalty when Plaintiff was first sentenced, and later sufficiently serious to warrant a

sentence of life-without-parole at her first resentencing. Therefore, the fact that the Board has repeatedly denied Plaintiff parole based solely on the seriousness of her offense supports a plausible inference that the Board continues to treat Plaintiff's sentence as a *de facto* life-without-parole sentence despite her 2017 resentencing. She has thus stated a viable claim under the Eighth Amendment that Georgia affords only sham parole consideration to life-sentenced juvenile offenders.[6]

**C. Plaintiff's Fourteenth Amendment Claim (Count II of the FAC)**

Plaintiff's Fourteenth Amendment claim, on the other hand, cannot withstand the Motion to Dismiss. The Eleventh Circuit held in *Howard* that the Eighth Amendment "clearly doesn't create a due-process-protected interest in 'not dying in prison.' . . . Nor is there a cognizable liberty interest in a 'meaningful opportunity for release.'" *Howard*, 134 F.4th at 1150. The Court is bound by this ruling. Therefore, the Court must find there is no cognizable constitutional due process claim that can arise from Plaintiff's Eighth Amendment claim.

As noted in the discussion of Plaintiff's Eighth Amendment claim above, Plaintiff acknowledges in the FAC itself (as well as the briefing on the instant

[6] For their part, Defendants argue that the parole system is not a sham, noting that Plaintiff has been afforded repeat parole considerations earlier than statutorily mandated. They reason that, if the parole system were indeed a sham, the Board would not go through the charade of pretending to consider Plaintiff for parole except when required by law to do so. This argument is unavailing at the pleading stage, where the Court is tasked only with determining whether the allegations in the complaint are sufficient on their face to state a claim under the Eighth Amendment. For the reasons explained above, the Court finds that they are.

motion to dismiss) that the Eleventh Circuit's ruling in *Howard* forecloses her due process claim as well as the related dimension of her Eighth Amendment claim that relies on the premise that she is entitled to some meaningful opportunity for release based on demonstrated maturity and rehabilitation. (FAC, Doc. 21 at 15 n.1; Doc. 30 at 25). As a petition for rehearing en banc remains pending in the *Howard* case, the Court recognizes that the precedential landscape could change. But, at this juncture, the Court is bound by the April 2025 panel ruling. Accordingly, Defendants' Motion to Dismiss must be **GRANTED** with respect to Plaintiff's Fourteenth Amendment claim in Count II of the First Amended Complaint. In the event the Eleventh Circuit modifies its *Howard* ruling following en banc review, Plaintiff may seek leave to reassert her Fourteenth Amendment claim.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. [Doc. 24]. Plaintiff's Fourteenth Amendment claim in Count II of the FAC is hereby **DISMISSED** in its entirety, **without prejudice**. Plaintiff may seek leave to reassert this claim if any future en banc review in *Howard* results in a change in the law that is favorable to Plaintiff.

Additionally, to the extent Plaintiff's Eighth Amendment claim relies on the constitutional theory that she is entitled to a "meaningful opportunity to obtain release [on parole] based on demonstrated maturity and rehabilitation[,]" she has also failed to state a claim upon which relief may be granted. That aspect of her

Eighth Amendment claim is dismissed.[7] However, Plaintiff has plausibly stated a claim that Georgia's statutory and regulatory framework governing parole consideration renders the parole scheme a sham, as applied to Plaintiff and other life-sentenced juvenile offenders. Plaintiff's Eighth Amendment claim may thus move forward on that constitutional theory. Accordingly, the Court **DENIES** Defendants' motion to dismiss the Eighth Amendment claim in its entirety.

Finally, the parties are **ORDERED** to submit a Joint Preliminary Report and Discovery Plan by **April 13, 2026** in accordance with the Local Rules. CivLR 16.1, NDGa. The Court will issue a scheduling order setting the remaining dates in the case schedule following review of the parties' submission.

**IT IS SO ORDERED** this 16th day of March, 2026.

**Amy Totenberg**
**United States District Judge**

[7] The Court notes that this aspect of Plaintiff's Eighth Amendment claim might also be revived should the law change after en banc review in *Howard*.